1

Matthew Z. Crotty
Casey Bruner
2  Riverside Law Group, PLLC
905 W. Riverside Ave.
3  Ste. 404
Spokane, Washington 99201

4

Additional counsel on signature page

5

Attorneys for Plaintiffs

6

7

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON

8

SUZANNE MALLOUK, ALFREDO
RODRIGUEZ PEREZ, and ARJUN
9  DHAWAN,

10                         Plaintiffs,

11  v.

AMAZON.COM INC. and STARBUCKS
12  CORPORATION,

13                         Defendants.

NO. 2:23-cv-852

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

14

15          Plaintiffs Suzanne Mallouk, Alfredo Rodriguez Perez, and Arjun Dhawan (together,

16  "Plaintiffs"), by and through their attorneys, make the following allegations against Defendants

17  Amazon.com Inc. ("Amazon") and Starbucks Corporation ("Starbucks") (collectively,

"Defendants"):

18

19                         **NATURE OF THE ACTION**

20          1.      Plaintiffs bring this action for damages and other legal and equitable remedies

21  resulting from the illegal actions of Amazon and Starbucks in collecting, retaining, storing,

22  converting, using, sharing, and profiting from Plaintiffs' and other similarly situated individuals'

23

24

COMPLAINT FOR DAMAGES AND JURY DEMAND - 1

biometric identifier information[1] (referred to at times as "biometrics")—their hand geometry ("hand geometry" or "palm scans" or "palm prints") and/or body geometry ("physiological characteristics concern[ing] the shape or composition of the body")—in direct violation of the New York City Biometric Identifier Information Law ("NYC BIIL" or "Biometric Identifier Information Law"), N.Y.C. Admin. Code § 22-1201, *et seq*.

2. On January 11, 2021, the City of New York enacted a new law that requires retailers and other commercial establishments that collect, retain, convert, store, or share customers' "biometric identifier information" to notify their customers of these practices before customers enter those establishments. *See* N.Y.C. Admin. Code § 22-1201 *et seq*. The type of information the law applies to includes any physiological or biological characteristic that is used to identify (or assist in identifying) a person, such as facial recognition, retina scans, fingerprints, handprints, or any other identifying characteristic like the shape or size of a person's body.

3. The NYC BIIL creates a simple mandate for commercial establishments that collect customers' biometric identifier information: they must "plac[e] a clear and conspicuous sign near all of the commercial establishment's customer entrances notifying customers in plain, simple language, in a form and manner prescribed by the commissioner of consumer and worker protection by rule, that customers' biometric identifier information is being collected, retained, converted, stored or shared, as applicable." N.Y.C. Admin. Code § 22-1202(a).

---

[1] "The Term 'biometric identifier information' means a physiological or biological characteristic that is used by or on behalf of a commercial establishment, singly or in combination, to identify, or assist in identifying, an individual, including, but not limited to: (i) a retina or iris scan, (ii) a fingerprint or voiceprint, (iii) a scan of hand or face geometry, or any other identifying characteristic." N.Y.C. Admin. Code § 22-1201.

COMPLAINT FOR DAMAGES AND JURY DEMAND - 2

4.     By adopting this basic mandate, the City of New York has made it clear that consumers have a right to know when commercial establishments are collecting their biometric identifier information, so that consumers can decide for themselves whether they want to shop at such establishments or further investigate those establishments' practices before allowing their biometric identifier information to be collected.

5.     The NYC BIIL also makes it unlawful for companies like Amazon and Starbucks "to sell, lease, trade, share in exchange for anything of value or otherwise profit from the transaction of biometric identifier information." N.Y.C. Admin. Code § 22-1202(b).

6.     Since 2019, when Amazon first opened several Amazon Go stores in New York City, Amazon has collected, converted, retained, and stored the biometric identifier information of all customers who enter its Amazon Go stores. Unlike traditional grocery or convenience stores where cashiers scan what customers are purchasing and charge them for the goods, an Amazon Go customer typically leaves the store with the goods they want and is automatically charged for such goods without waiting in line, scanning, or interacting with a cashier. To make this "Just Walk Out" technology possible, the Amazon Go stores constantly collect and use customers' biometric identifier information, including by scanning the palms of some customers to identify them and by applying computer vision, deep learning algorithms, and sensor fusion that measure the shape and size of each customer's body to identify all customers, track where they move in the stores, and determine what they have purchased.

7.     Amazon also utilizes Amazon One palm scanners in additional stores in New York City, including Whole Foods Markets, that are owned and operated by Amazon. And Amazon provides Amazon One palm scanner devices and databases to third-party businesses across the nation, from Starbucks–Amazon Go stores in New York City to T-Mobile Stadium in Seattle.

8.      In November 2021, Starbucks opened its first Starbucks–Amazon Go store at 111 E. 59th Street, New York, NY; and in July 2022, opened its second Starbucks–Amazon Go store at 620 8th Avenue, New York, NY.   Under an agreement with Amazon, for each customer entering Starbucks' gated marketplace / lounge area, which provides a cashier-less experience, Starbucks uses Amazon's "Just Walk Out" technology to collect and then share each customer's biometric identifier information with Amazon, who can then use such information for its own purposes. In exchange, Starbucks receives a range of benefits, including: (a) the ability to use Amazon's "Just Walk Out" technology at marginal or discounted rate; (b) Amazon's insights and "Just Walk Out Analytics," which are each aimed at increasing Starbucks' revenues for its Starbucks–Amazon Go stores; (c) the ability to operate these Starbucks stores with fewer employees, allowing Starbucks to save and retain money that would otherwise be spent on employee salaries, benefits, training, and management of such employees; and (4) an increase in customers and sales. Through this arrangement with Amazon, Starbucks sells, trades, and shares customers' biometric identifier information with Amazon in exchange for various things of value, and otherwise profits from the transaction of biometric identifier information.

9.      Thus, at each of these two Starbucks–Amazon Go stores, Starbucks has collected, converted, retained, stored, and shared the biometric identifier information of all customers who enter its marketplace or lounge seating areas using Amazon's "Just Walk Out" technology. Starbucks constantly collects and uses the biometric identifier information of each customer who enters the gated area of the stores, including by scanning the palms of some customers to identify them and by applying computer vision, deep learning algorithms, and sensor fusion that measure the shape and size of each customer's body to identify customers, track where they move within the gated area, and determine what they have purchased.

COMPLAINT FOR DAMAGES AND JURY DEMAND - 4

10.     Despite constantly collecting customers' biometric identifier information in Amazon Go and Starbucks–Amazon Go stores (together, the "Stores") in New York City, Amazon and Starbucks have not complied with the simple disclosure requirements of the Biometric Identifier Information Law.

11.     From January 15, 2022, when the law's implementing rule went into effect, through March 13, 2023, Amazon failed to post any signs at the entrances of any Amazon Go stores in New York City—including the two Starbucks–Amazon Go stores—that would notify customers that those stores collect, retain, convert, and store consumers' biometric identifier information.

12.     From January 15, 2022, when the law's implementing rule went into effect, through March 13, 2023, Starbucks failed to post any signs at the entrances of any Starbucks–Amazon Go stores in New York City that would notify customers that those stores collect, retain, convert, store, and share consumers' biometric identifier information.

13.     On February 7, 2023, Plaintiff Alfredo Rodriguez Perez notified Amazon in writing that he had visited the Amazon Go store at 80 Pine Street, that the store was collecting customers' biometric identifier information, that Amazon has an obligation to post a sign notifying customers about collecting such information, and that Amazon was not complying with that obligation.

14.     Amazon did not respond to Mr. Rodriguez Perez's letter at all, let alone provide him with an express written statement within 30 days that the violation had been cured and that no further violations would occur in the future, as the Biometric Identifier Information Law required Amazon to do to prevent Mr. Rodriquez Perez from filing suit. Nor did Amazon cure the violation.

COMPLAINT FOR DAMAGES AND JURY DEMAND - 5

15.     Instead, on or around March 14, 2023, several days after the New York Times published a story on Amazon's failure to post a sign about its collection of biometric identifier information in its Amazon Go stores in New York City,[2] Amazon and Starbucks first posted signs outside of the Amazon Go and Amazon Go-Starbucks stores in New York City.

16.     Amazon's new signage woefully fails to comply with the disclosure mandate of the Biometric Identifier Information Law. The new sign fails to disclose that Amazon converts, retains, and shares biometric identifier information. Even worse, the sign informs customers that Amazon will not collect biometric identifier information on them unless they use the Amazon One palm scanner to enter the Amazon Go store, even though Amazon Go stores do collect biometric identifier information on every single customer, including information on the size and shape of every customer's body. Nor is the sign clear and conspicuous, as the sign's color, style, and font are designed to avoid attracting customers' attention. And at Amazon Go's 30 Rockefeller Plaza location—a store with six customer entrance doors, placed side-by-side— Amazon placed just a single small sign at the furthest end, making it all but impossible that a customer entering from the opposite side (*i.e.*, five doors down) will ever see, much less read, the sign.

17.     Similarly, Starbucks' new signage woefully fails to comply with the disclosure mandate of the Biometric Identifier Information Law. The new sign fails to adequately disclose that Starbucks collects, retains, converts, stores, and shares biometric identifier information. Even

---

[2] *See* Kashmir Hill, *Which Stores Are Scanning Your Face? No One Knows*, N.Y. Times (Mar. 10, 2023), https://www.nytimes.com/2023/03/10/technology/facial-recognition-stores.html (stating that a reporter visited an Amazon Go store in Manhattan that "was awash in cameras, sensors and palm scanners" but did not have a sign disclosing that the store collects customers' biometric identifier information).

COMPLAINT FOR DAMAGES AND JURY DEMAND - 6

worse, the sign informs customers that Starbucks will not collect their biometric identifier information unless they use the Amazon One palm scanner to enter the gated areas of the Starbucks–Amazon Go store, even though such stores do collect biometric identifier information on every customer who enters the gated area of the store, including information on the size and shape of every customer's body. Nor is the sign clear and conspicuous, as the sign's color, style, and font are designed to avoid attracting customers' attention.

18.     By posting these signs, Defendants' compliance with the Biometric Identifier Information Law has gone from bad to worse: instead of leaving customers in the dark about its collection of biometric information, as Defendants did for 14 months, Defendants are now affirmatively offering false assurances that they will not collect any biometric information from most customers.

19.     On March 21, 2023, Plaintiff Mallouk notified Starbucks and Amazon in separate letters about her November 2022 visit to the Starbuck-Amazon Go store at 111 E. 59th Street, each company's obligation to post a sign notifying customers about its collection of biometric identifier information in light of each company's collection of information about the size and shape of each customer's body and the palm scans of some customers, and Starbucks' and Amazon's failure to *comply* with that obligation.  Starbucks did not respond to Ms. Mallouk's letter, much less cure the identified violation. Amazon responded to Ms. Mallouk's letter, but stated that it would only post signage disclosing its collection of palm scans and refused to post signage disclosing its biometric collection through measuring the size and shape of customers' bodies.

20.    In addition to failing to comply with the NYC BIIL's disclosure mandate, both Amazon and Starbucks have violated the law's prohibition on sharing, selling, or trading biometric identifier information for anything of value or profiting from such the transaction of such information. N.Y.C. Admin. Code § 22-1202(b). Amazon has unlawfully shared customers' palmprints with third parties, by collecting customers' palmprints at Amazon Go stores and other stores in New York City, and then making its Amazon One device and database of palmprints available to third-party retailers, in exchange for things of value and profit. And Starbucks has unlawfully shared with Amazon information about the size and shape of each customer's body who enters the gated areas of the Starbucks–Amazon Go stores, as well as the palmprints of customers who enter the gated areas with a palm scan.

21.    In this action, Plaintiffs seek a declaration that Amazon and Starbucks have both violated the Biometric Identifier Information Law's disclosure requirement and the law's ban on the sharing of biometric identifier information for anything of value, an order requiring Amazon and Starbucks to comply with the law, and damages for themselves and the other customers whose rights were violated by Amazon and Starbucks, among other forms of relief.

## JURISDICTION AND VENUE

22.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members in each class (and the Starbucks Subclass) and the aggregate amount in controversy with respect to each Defendant exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendants.

23.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because both Defendants reside in the State of Washington and because a substantial portion of the events that

gave rise to this cause of action occurred here.

24.     This court has personal jurisdiction over Defendants, because both Defendants reside in the State of Washington and in this District, and also because a substantial portion of the events that gave rise to this cause of action occurred in this District.

## PARTIES

25.     Plaintiff Alfredo Rodriguez Perez is a resident of Kings County, New York, and has resided in New York City since 2015.

26.     Plaintiff Suzanne Mallouk is a resident of Sullivan County, New York. She maintains an office for her business in Manhattan.

27.     Plaintiff Arjun Dhawan is a resident of New York County, New York.

28.     Defendant Amazon.com, Inc. is a publicly-traded company headquartered in Seattle, Washington and incorporated in Delaware. Amazon is the world's largest retailer and serves its consumers through both online and physical stores, including in the City of New York.

29.     Defendant Starbucks Corporation is a publicly traded company headquartered in Seattle, Washington and incorporated in Washington. Starbucks is the world's largest coffeehouse chain and serves its consumers through more than 35,000 stores globally, including nearly 16,000 stores in the United States and nearly 200 stores in New York City.

## FACTUAL BACKGROUND

### I.  The New York City Biometric Identifier Information Law

30.     The use of a biometric scanning system in commercial establishments entails serious risks. Unlike payment cards—which can be changed or replaced if stolen or compromised—a consumer's fingerprints and palmprints are permanent biometric identifiers that cannot. Accordingly, consumers are subject to serious and irreversible privacy risks. For example, if a device or database containing employees' palmprints data is hacked, breached, or otherwise

1    exposed, consumers have no means by which to prevent identity theft and unauthorized tracking.

2          31.    Recognizing the need to protect citizens from these risks, New York City enacted

3    the Biometric Identifier Information Law, N.Y.C. Admin. Code § 22-1201, *et seq*. ("NYC BIIL"

4    or "Biometric Identifier Information Law") in 2021, to regulate companies that collect and store

5    biometric information. *See* New York City Council Committee on Consumer Affairs and

6    Business Licensing, Transcript December 10, 2020.

7          32.    NYC BIIL makes it unlawful for a company to, *inter alia*, "sell, lease, trade, share

8    in exchange for anything of value or otherwise profit from the transaction of biometric identifier

9    information." N.Y.C. Admin. Code § 22-1202(b). In addition, the law's disclosure requirement

10    provides that "Any commercial establishment that collects, retains, converts, stores or shares

11    biometric identifier information of customers must disclose such collection, retention, conversion,

12    storage or sharing, as applicable, by placing a clear and conspicuous sign near all of the

13    commercial establishment's customer entrances notifying customers in plain, simple language, in

14    a form and manner prescribed by the commissioner of consumer and worker protection by rule,

15    that customers' biometric identifier information is being collected, retained, converted, stored or

16    shared, as applicable."

17          33.    The Biometric Identifier Information Law defines the term "biometric identifier

18    information" as "a physiological or biological characteristic that is used by or on behalf of a

19    commercial establishment, singly or in combination, to identify, or assist in identifying, an

20    individual, including, but not limited to: (i) a retina or iris scan, (ii) a fingerprint or voiceprint,

21    (iii) a scan of hand or face geometry, or any other identifying characteristic." N.Y.C. Admin.

22    Code § 22-1201. The specific examples of "biometric identifier information" identified in § 22-

23    1201 are illustrative and not exhaustive.

24

COMPLAINT FOR DAMAGES AND JURY DEMAND - 10

34.     As the New York City Council's Committee on Consumer Affairs and Business Licensing stated in its December 10, 2020 Committee Report (at p. 3) on the Biometric Identifier Information Law, "physiological characteristics concern the shape or composition of the body". In other words, information on the size or shape of a customer's body is an "identifying characteristic" that qualifies as "biological identifier information" under § 22-1201.

35.     The Biometric Identifier Information Law states that establishments can comply with the disclosure requirement of § 22-1202(a) by posting at every entrance the sign prescribed by the Commissioner of Consumer and Worker Protection. N.Y.C. Admin. Code § 22-1202.

36.     In 2021, the Commissioner of Consumer and Worker Protection adopted a rule to implement the Biometric Identifier Information Law. The rule, located in Chapter 8 of Title 6 of the Rules of the City of New York, states that:

> To comply with section 22-1202 of Chapter 12 of Title 22 of the New York City Administrative Code, a commercial establishment covered by such section must post a sign in a clear and conspicuous manner at every entrance used by customers in a size of at least 8.5 inches by 11 inches that discloses if customers' biometric identifier information is being collected, retained, converted, stored, or shared. The requirements of this section may be fulfilled by posting a color copy of the Biometric Identifier Information Disclosure, as made publicly available on the Department's website, in a clear and conspicuous manner at every entrance used by customers in a size of at least 8.5 inches by 11 inches.

37.     The following image is the Biometric Identifier Information Disclosure sign that the Department of Consumer and Worker Protection has made publicly available on its website so that commercial establishments like Amazon and Starbucks could post a color copy of this sign and comply with the Biometric Identifier Information Law's sign mandate.

COMPLAINT FOR DAMAGES AND JURY DEMAND - 11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

## Attention Customers

### Biometric identifier information collected at this location

**Business Name:**

This Business collects, retains, converts, stores, or shares customers' biometric identifier information, which may include:


facial recognition


eye scans


voiceprints

This is information that can be used to identify or help identify you.

**II.    Amazon Go Stores in New York City Collect, Use, Retain, Convert, And Store Consumers' Biometric Identifying Information, Including The Shape And Size Of Every Customer's Body And A Palm Image Of Many Customers**

38.     In 2018, Amazon launched its first Amazon Go stores to sell food, drinks, and other consumer goods in American cities. The key feature that sets Amazon Go stores apart from traditional stores is that customers walk out of the stores with goods they want to buy without checking out with a cashier or scanning goods at registers themselves. Amazon calls this "Just Walk Out" technology.

COMPLAINT FOR DAMAGES AND JURY DEMAND - 12

39.     In 2019, Amazon opened its first of several Amazon Go stores in the City of New York. Today, Amazon operates eight Amazon Go stores in New York City.

40.     As Amazon explains on its own website, "Just Walk Out technology uses a combination of sophisticated tools and technologies to determine who took what from the store. When a consumer takes something off the shelf, it's added to their virtual cart. When the consumer puts the item back on the shelf, it comes out of their virtual cart. After they leave the store, they're charged for the items they left the store with." Amazon, Just Walk Out technology by Amazon FAQs, https://perma.cc/X5EB-FFY6.

41.     Just Walk Out technology relies on computer vision, a field of artificial intelligence that allows computers to interpret and understand visual information. Common applications of computer vision include object recognition and detection, surveillance and security, and facial recognition. Just Walk Out Technology also uses deep learning algorithms, a subset of machine learning that allows for complex extraction of input data. The technology also uses "sensor fusion," which is the process of combining data from cameras and other sensors to provide a comprehensive understanding of any given environment.

42.     Through these technologies, Amazon identifies and tracks the movements of each person who is shopping from the time they enter the store until they leave. And these technologies allow Amazon to distinguish each person from all the other people in the store. This process is called "Person Detection." When conducting Person Detection during the time a customer is in the store, Amazon collects, uses, retainers, converts, and stores information on the size and shape of each customer's body (as well as the bodies of Amazon's workers).

43.     Person Detection starts the moment that a customer enters the store, which is when Amazon connects each person's body to the person's Amazon account.

COMPLAINT FOR DAMAGES AND JURY DEMAND - 13

1    44.    A customer only has three options for entering an Amazon Go store: a credit card,

2    a QR code generated by the Amazon mobile app on the customer's phone, or a scan of the

3    customer's palm using "Amazon One technology." *See* Amazon, Shopping at an Amazon Go

4    Store, https://perma.cc/MH2P-2PCA. All of these methods of entry (*i.e.*, credit card, QR code, or

5    a customer's palm scan) allow Amazon to know the identity of the person who has scanned their

6    credit card, QR code, or palm when entering the store, when that person enters and leaves the

7    store, what that person selects, their prior purchase history, and who to charge for any selected

8    products.

9    45.    First, the customer can scan a code in their Amazon app, which allows Amazon to

10   know which person is entering the store and to charge that person through the same method of

11   payment saved in their Amazon app.

12   46.    For example, in the picture below, a customer at a Midtown Manhattan Amazon

13   Go store scans a code in his Amazon app, which causes the gates to open and allow him to enter.



14

15

16

17

18

19

20

21

22

23

24

COMPLAINT FOR DAMAGES AND JURY DEMAND - 14

47.    Second, the customer can scan a credit card, which likewise allows Amazon to know which person is entering the store and charge that person's credit card.

48.    Third, the customer can use Amazon One, a technology that links an image of the customer's palm to their Amazon account, and then allows the customer to enter the store simply by hovering their palm over a scanner. Amazon's proprietary imaging and computer vision algorithms capture and encrypt the customer's palm image, and after that the person's palm serves as a unique palm signature that can be read by Amazon's scanners. Thus, when a person enters the Amazon Go store with their Amazon One palm signature, Amazon knows who that person is and will charge that person's Amazon account for any goods that person takes from the store. Amazon's website explains how Amazon One works. *See* Amazon, How it works: Meet Amazon One, https://perma.cc/AL8T-JFYD.

## How does Amazon One work?

 +  = 

**Your hands are uniquely yours**

Your palm is made up of tiny, distinct features on and below the surface, many that are indiscernible to the human eye or a standard camera.

**The Amazon One device is designed to read them**

In seconds, a process of proprietary imaging and computer vision algorithms capture and encrypt your palm image.

**To create your unique palm signature**

Amazon One uses the information embedded in your palm to create a unique palm signature that it can read each and every time you use it.

COMPLAINT FOR DAMAGES AND JURY DEMAND - 15

49.     No matter which entry option a customer chooses, Amazon immediately identifies that person (upon their entry of the Amazon Go store) based on the size and shape of that person's body, and then continues to track that person and analyze the person's movements based on their size and shape until the person leaves the store. To do this, Amazon uses computer vision, deep learning algorithms, and hundreds of cameras and sensors throughout each store.

50.     When customers are shopping in an Amazon Go store, the top-level view of Amazon's system looks like the following image, where each customer is represented by a unique image and a distinct label. This top-level view allows Amazon to track where every customer moves within the store.



51.     Amazon also applies computer vision to conduct a horizontal-level view of each customer, which enables Amazon to determine which people are taking what items off shelves or putting items back on shelves. In this horizontal-level view—shown in the two images below—Amazon scans the shape and size of each person's body and creates a skeleton-like figure for each person that is unique to their size and shape. The movements of these unique figures are closely tracked by Amazon, so that Amazon can associate each person with the products they touch, and thus determine which person is removing an item from the shelf or returning it.

COMPLAINT FOR DAMAGES AND JURY DEMAND - 16

 

52.     Amazon operates the Just Walk Out technology inside its own Amazon Go stores, as well as in the stores of other companies like Starbucks.

53.     One of the first indications that Just Walk Out technology uses body measurements to identify customers emerged in a 2015 United States patent application by Amazon. As described by a Vox article that links to these patent applications, the Just Walk Out technology would "allow shoppers to pick items and leave without stopping at a cashier station or kiosk"; would use cameras to identify "when a person entered the facility, when she removed something from a shelf and when she left with an item in her hand"; and would distinguish between users through "user-identifying information (e.g., *images of the user, height of the user, weight of the user*), a user name and password, user biometrics, purchase history, payment instrument information (e.g., credit card, debit card, check card), purchase limits, and the like.'" Jason Del Rey, *We May Have Just Uncovered Amazon's Vision for a New Kind of Retail Store*, Vox (Mar. 30, 2015) (emphasis in article), https://www.vox.com/2015/3/30/11560904/we-may-have-just-uncovered-amazons-vision-for-a-new-kind-of-retail.

54.     Later patents obtained by Amazon appear to confirm that the Just Walk Out technology uses various techniques "to identify a user. For example, image capture and facial cognition may be used." US Patent No. US 11,301,783 B1 at 12:7–8 (Apr. 12, 2022).[3]

55.     Likewise, "other unique and/or temporary identifiers (e.g., the color of the user's shirt, shoes, hat, pants, the user's skeletal structure) may be identified and used to assist in identifying the user as they move around the materials handling facility. For example, if the user is wearing a bright yellow shirt, that shirt may be identified and used as a temporary identifier for the use in identifying the user as they move around the materials handling facility that day. As another example, images representative of user skeletal structure may be captured." *Id.* at 12:24–33 (emphasis added).

56.     Similarly, "other user characteristics and/or features may be considered when disambiguating between multiple potential users to determine which one performed an item action. For example, images of the user performing the item action may be processed to determine the hand used to perform the action item, the posture, size and/or shape of the user, the movement and/or gate [sic] of the user as they approached the item, the orientation of the user relative to the item, the skeletal structure of the user that performed the item action and/or other temporary or permanent characteristics of the user, etc. Such information may be compared with information associated with the user as a factor in determining the probability that the user performed the item action." *Id.* at 13:41–54 (emphasis added).

---

[3] U.S. Patent No. US 11,301,783 B1 (Apr. 12, 2022),
https://patentimages.storage.googleapis.com/92/c8/62/2423c75bf3ab3b/US11301783.pdf.



57.     In another patent, Amazon suggests that its technology may furthermore distinguish customers by "height", "size", "width", "a facial feature", "length of a body part", "posture", "pose", "gait", or "speed of movement". U.S. Patent No. US 11,462,005 B1 at 5:57–67 (Oct. 4, 2022).[4]

58.     Beyond identifying people and their movements, the Just Walk Out technology can also recognize thousands of products in the real world—which is how the store operating Just Walk Out technology knows that a particular person has removed (or returned) a specific product from a shelf. Through this "Object Recognition" process, the Just Walk Out technology can identify the same yellow package of Bombay Potatoes (shown to the left) or the same green

---

[4] https://patentimages.storage.googleapis.com/b9/ee/61/6b08fe7d94b361/US11462005.pdf.
Other patents suggest that "facial recognition" and other "user provided information" including the "skin tone" of a customer's hand are also used to determine when a customer has selected a product. *See* U.S. Patent No. US 10,268,983 B2 at 5:5–6, 6:48–49 (Apr. 23, 2019); U.S. Patent No. US 11,100,463 B2 (Aug. 24, 2021).

COMPLAINT FOR DAMAGES AND JURY DEMAND - 19

package of Pirate's Booty, whether the package is standing straight up, crinkled in a ball, or shown in different lighting.



59.     While Amazon initially collects identifying information about customers in the Amazon Go stores, including some customers' palm images and the size and shape of every customer's body, that information is transmitted outside of the stores to Amazon's cloud services, where Amazon converts, analyzes, and applies the information on a real-time basis to make decisions about which customers have moved where and what they have removed from and returned to shelves.

60.     Upon information and belief, Amazon also retains and stores the biometric information of each Amazon Go customer, including information on the size and shape of each customer's body. Amazon then converts, uses, and in some cases, shares or sells this information for Amazon's own use and profit.

61.     Amazon's Just Walk Out technology benefits Amazon financially because it does not have to employ workers in its Amazon Go stores to scan groceries, place items in bags, or spend large amounts of time accepting payments.

62.     As alleged below, Amazon's practices of (1) collecting, retaining, converting, storing, and/or sharing biometric identifier information (specifically, palmprints) without placing clear and conspicuous signs near all of its commercial establishments' customer entrances, and

COMPLAINT FOR DAMAGES AND JURY DEMAND - 20

(2) sharing palmprints in exchange for things of value or otherwise profiting from the transaction of biometric identifier information violated NYC BIIL.

III.   **Starbucks's Agreement To Collect And Then Share The Biometric Identifier Information Of Each Starbucks–Amazon Go Customer**

63.   Starbucks operates its Starbucks–Amazon Go stores pursuant to an agreement with Amazon: Starbucks collects customers' biometric identifier information on Starbucks' premises using Amazon's Just Walk Out Technology and then shares that information with Amazon so that Amazon can use the information for its own purposes.

64.   Under this agreement, Amazon installs the Just Walk Out technology into the Starbucks store, including the gates where Starbucks' customers scan their palms, credit cards, or in-store codes to enter; the dozens of cameras used to measure the shape and size of customers and track them within the store; and the computer equipment that transmits data from the Starbucks store to Amazon's servers outside of Starbucks' premises. Amazon also sources some of the food and beverages in the stores.

65.   Once this Just Walk Technology is installed, Starbucks and its employees primarily manage the entire store, including by directing and instructing customers on how to scan their palms or otherwise enter the gated area, answering customers' questions, stocking the shelves with food and items sourced from Starbucks and other suppliers (including local kitchens and bakeries), preparing hot foods that are served, and cleaning the entire store. In addition, the furniture and aesthetic of the Starbucks–Amazon Go store provide customers with the experience of a traditional Starbucks store, except that they have the ability to purchase items without having to check out at a register. *See* Starbucks Pickup and Amazon Go Collaborate to Launch New Store Concept in New York City (Nov. 18, 2021), https://stories.starbucks.com/press/2021/starbucks-pickup-and-amazon-go-collaborate-to-launch-new-store-concept-in-new-york-city/.

COMPLAINT FOR DAMAGES AND JURY DEMAND - 21

1    66.    Once the Starbucks–Amazon Go stores were fully launched, Amazon's primary

2    role in these stores has been limited to checking to make sure that the Just Walk Out technology

3    is working properly. In that regard, Amazon's role in the Starbucks–Amazon Go stores is the

4    same as the role an information technology ("IT") contractor plays in setting up and managing

5    video surveillance for a commercial establishment.

6    67.    However, unlike a traditional IT contractor, Amazon is free to use such Starbucks-

7    collected customer information for Amazon's own commercial purposes that are unrelated to the

8    operations of the Starbucks stores.

9    68.    After Starbucks collects each customer's biometric identifier information—

10   including measurements of the size and shape of each customer's body and customers' palm

11   images—on Starbucks' premises, Starbucks then shares and transmits that information to

12   Amazon's servers located outside of the Starbucks store. Amazon takes that Starbucks customer's

13   information and uses it to transact business in stores wholly owned and operated by Amazon or

14   other third parties.

15   69.    Because Amazon is partly responsible for the operation of the Starbucks–Amazon

16   Go stores, Amazon too collects biometric identifier information of customers at those stores.

17   **IV.    Despite Constantly Collecting, Converting, Retaining, Storing, And Sharing
         Customers' Biometric Identifier Information, Defendants Have Failed to Disclose**
18   **Those Practices**

19   70.    The information about customers who enter the gated areas of Amazon Go and

20   Starbucks–Amazon Go stores that Defendants collect, retain, convert, and store to identify those

21   customers—namely information about the size and shape of each customer's body and the palm

22   images of some customers—and that Starbucks shares with Amazon, constitutes "biometric

23   identifier information" within the meaning of the NYC BIIL.

24

COMPLAINT FOR DAMAGES AND JURY DEMAND - 22

71.   A "scan of the hand" is considered "biometric identifier information" under N.Y.C. Admin. Code § 22-1201, which defines the term "biometric identifier information" to include "a scan of hand or face geometry."

72.   Information on the size and shape of each customer's body is an "other identifying characteristic" that qualifies as "biometric identifier information" within the meaning of N.Y.C. Admin. Code § 22-1201.

73.   As the New York City Council's Committee on Consumer Affairs and Business Licensing stated in its December 10, 2020 Committee Report on the Biometric Identifier Information Law, "physiological characteristics concern the shape or composition of the body"— in other words, information on the size or shape of a customer's body is an "identifying characteristic" that qualifies as "biological identifier information" under N.Y.C. Admin. Code § 22-1201.

74.   Furthermore, in the late 1800s measurements of the size and shape of people's bodies was the first type of biometric information that law enforcement agencies used to uniquely identify individuals, even before fingerprints were widely used to identify people. Under the so-called Bertillon System, which was used by New York City and State officials, law enforcement would take precise measurements of criminals' body parts, as well as their standing height, sitting height, and the distance between their fingertips and outstretched arms.[5]

---

[5] *See* New York State, Division of Criminal Justice Services, The Bertillon System, https://perma.cc/U3DU-65KF; Selia Cheng, These 100-year-old photos reveal the birth of the modern mugshot, QZ (Sept. 24, 2016), https://perma.cc/WZ5F-F5WP; Cleveland Police Museum, Criminal Identification: The Bertillon System, https://perma.cc/6DH2-DZ36.

COMPLAINT FOR DAMAGES AND JURY DEMAND - 23

75.     Because Defendants collect, retain, convert, and store such biometric identifier information about their store customers and because Starbucks shares the same information with Amazon, Defendants both have an obligation under the N.Y.C. Admin. Code § 22-1202(a) to "plac[e] a clear and conspicuous sign near all of the commercial establishment's customer entrances notifying customers in plain, simple language, in a form and manner prescribed by the commissioner of consumer and worker protection by rule, that customers' biometric identifier information is being collected, retained, converted, stored or shared, as applicable."

76.     Despite the fact that each Amazon Go and Starbucks–Amazon Go store in New York City has collected, retained, converted, and stored biometric identifier information of each customer who entered its gated areas since 2021, and that Starbucks has shared such information with Amazon, prior to March 14, 2023, neither Amazon nor Starbucks displayed any signs at the entrances of its Amazon Go and Starbucks–Amazon Go stores to notify customers that the stores collect, retain, convert, store, or share customers' biometric identifier information, including but not limited to the standard 8.5 x 11-inch sign authorized by New York City's Department of Consumer and Worker Protection.

**V.     Plaintiffs' Experiences**

***A.     Plaintiff Rodriguez Perez***

77.     On January 30, 2023, Mr. Rodriguez Perez visited the Amazon Go Store at 80 Pine Street, New York, NY, 10005.  The 80 Pine Street Amazon Go store has an alternate mailing address of 110 Maiden Lane, New York, NY 10005.

78.     The Amazon Go store at 80 Pine Street in Manhattan has the same Just Walk Out technology as the other Amazon Go stores in New York City, including same types of computer vision, deep learning algorithms, and sensor fusion that Amazon applies at its other Amazon Go stores and in the cloud.

COMPLAINT FOR DAMAGES AND JURY DEMAND - 24

79.     When Mr. Rodriguez Perez entered the 80 Pine Street Amazon Go store, he did not see any sign at any entrance that notified customers that customers' biometric identifier information is being collected, retained, converted, or stored.  In particular, he did not see the 8.5 x 11-inch sign that the Department of Consumer and Worker Protection has made available to commercial establishments like Amazon to comply with § 22-1202(a).  See https://perma.cc/QX57-G48H.

80.     To enter the store, Mr. Rodriguez Perez scanned a code in his Amazon app. He opted to enter the store this way, instead of scanning his palm with the Amazon One technology, because he did not want to provide Amazon with such personal information about himself and his body.

81.     Upon entering the store, Amazon's computer vision identified Mr. Rodriguez Perez through the shape and size of his body and then tracked every single movement that Mr. Rodriguez Perez made in the store to identify where he went, what items he removed from the shelves, and what items he put back on the shelves.

82.     During his visit, Mr. Rodriguez Perez picked out three items—a box of Whole Foods' generic Oreo cookies, Annie's Cheddar Bunnies Baked Snack Crackers, and mango Kombucha—and walked out of the store. After he left the store, Mr. Rodriguez Perez received a receipt for $13.17 from Amazon for purchasing those three items.

83.     If Mr. Rodriguez Perez had seen the standard 8.5 x 11-inch DCWP-authorized sign at the entrance of the 80 Pine Street Amazon Go store informing him that the store "collects, retains, converts, stores, or shares customers' biometric identifier information" (or a similar custom sign that complies with the Biometric Identifier Information Law), he would not have entered the store and he would not have made a purchase at the 80 Pine Street Amazon Go store.

COMPLAINT FOR DAMAGES AND JURY DEMAND - 25

1
2

84.     Other than when he visited the 80 Pine Street Amazon Go store on January 30, 2023, Mr. Rodriguez Perez has never entered an Amazon Go store.

3
4
5
6
7
8

85.     Mr. Rodriguez Perez values his privacy and is concerned that companies track collect, retain, convert, store, and share too much information that is linked to him and other people. To limit how much information is tracked to him personally, Mr. Rodriguez Perez maintains an email address that does not contain his name. Mr. Rodriguez Perez generally tries to prevent companies from tracking his personal information online, including by not accepting cookies when possible.

9
10
11
12

86.     Mr. Rodriguez Perez believes that consumers should be fully informed about what data and information about them companies collect, retain, convert, store, share, and sell before those companies collect that data and information, so that consumers can understand and knowingly consent to the collection of that data and information.

13
14
15
16
17
18

87.     On February 7, 2023, Mr. Rodriguez Perez mailed a letter to the Amazon Go Store at 80 Pine Street, notifying Amazon that he had visited the Amazon Go store at 80 Pine Street, that the store was collecting biometric identifier information on consumers, including by "using computer vision and video of bodily characteristics to identify customers," that Amazon has an obligation to post a sign notifying customers about collecting such information, and that Amazon was not complying with that disclosure obligation.

19
20
21
22

88.     Amazon did not respond to Mr. Rodriguez Perez's February 7, 2023 letter, despite the fact that Mr. Rodriguez Perez provided Amazon his home address. Nor did Amazon provide Mr. Rodriguez Perez with an express written statement that the violation of N.Y.C. Admin. Code § 22-1202(a) has been cured and that no further violations shall occur.

23
24

COMPLAINT FOR DAMAGES AND JURY DEMAND - 26

1  **B.      *Plaintiff Mallouk***

2          89.     On November 29, 2022, Plaintiff Mallouk visited the Starbucks–Amazon Go Store

3  at 111 E. 59th Street, New York, NY, 10022. This store has the same Just Walk Out technology

4  as the other Starbucks–Amazon Go store located at 620 8th Avenue, New York, NY, including

5  the same types of computer vision, deep learning algorithms, and sensor fusion and the same

6  Amazon One hardware devices that scan customers' palms.

7          90.     When Ms. Mallouk entered the 111 59th Street Starbucks–Amazon Go store, she

8  did not see any sign at any entrance that notified customers that customers' biometric identifier

9  information is being collected, retained, converted, stored, or shared. In particular, she did not see

10 the 8.5 x 11-inch sign that the Department of Consumer and Worker Protection has made available

11 to    commercial    establishments    like    Starbucks    to    comply    with    §    22-1202(a).    *See*

12 https://perma.cc/QX57-G48H.

13         91.     To enter the store's marketplace and lounge seating area, Ms. Mallouk used her

14 credit card. She opted to enter the store this way, instead of scanning her palm with the Amazon

15 One technology, because she did not want to provide Starbucks with such personal information

16 about herself or her body.

17         92.     The   store   then   used   Amazon's   computer   vision   technology   to   identify   Ms.

18 Mallouk (*i.e.*, through the shape and size of her body) and track every single movement that Ms.

19 Mallouk made in the store to identify where she went, what items she removed from the shelves,

20 and what items she put back on the shelves.

21         93.     During her visit, Ms. Mallouk selected two items—two Buffalo-Style Chicken

22 Wraps—and walked out of the store. After she left the store, Ms. Mallouk received a receipt for

23 $15.24 from Amazon for purchasing those two items.

24

94.     If Ms. Mallouk had seen the standard 8.5 x 11-inch DCWP-authorized sign at the entrance of the 111 E. 59th Street Starbucks–Amazon Go store informing her that the store "collects, retains, converts, stores, or shares customers' biometric identifier information" (or a similar custom sign that complies with the Biometric Identifier Information Law), she would not have entered the gated area of the Starbucks store or made the purchase. Other than when she visited the 111 E. 59th Street Amazon Go store on November 29, 2022, Ms. Mallouk has never entered the gated area of a Starbucks–Amazon Go store.

95.     Ms. Mallouk values her privacy and is concerned that companies track collect, retain, convert, store, and share too much information that is linked to her and other people. Ms. Mallouk believes that consumers should be fully informed about what data and information about them companies collect, retain, convert, store, share, and sell before those companies collect that data and information, so that consumers can understand and knowingly consent to the collection of that data and information.

96.     On March 21, 2023, Ms. Mallouk mailed a letter to Starbucks to notify the company that she had visited its 111 E. 59th Street store location, that the store "has collected, retained, converted, and stored biometric identifier information about me and other customers who entered the store, including by using computer vision to collect information on the size and shape of each customer's body and palm scans for customers who choose to enter the store by scanning their palms," that Starbucks has an obligation to post a sign notifying customers about collecting such information, and that Starbucks was not complying with that disclosure obligation.

97.     Starbucks did not respond to Ms. Mallouk's letter.

COMPLAINT FOR DAMAGES AND JURY DEMAND - 28

98.    On March 21, 2023, Ms. Mallouk mailed a letter to Amazon to notify the company that she had visited its 111 E. 59th Street store location, that the store "has collected, retained, converted, and stored biometric identifier information about me and other customers who entered the store, including by using computer vision to collect information on the size and shape of each customer's body and palm scans for customers who choose to enter the store by scanning their palms," that Amazon has an obligation to post a sign notifying customers about collecting such information, and that Amazon was not complying with that disclosure obligation.

99.    On April 19, 2023, Amazon sent Ms. Mallouk a letter explaining—on behalf of Amazon, and not on behalf of Starbucks—that "Amazon's Just Walk Out technology does not collect, retain, convert, or store biometric identifier information from customers at the Easter 59th Street location or other stores deploying it," although "Amazon does collect and store biometric identifier information from customers who choose to register for and use its Amazon One palm-scanning technology. Amazon has thus installed . . . placards at customer entrances to the East 59th Street location (and other New York City locations) informing customers before they enter that the store is equipped with Amazon One palm scanners, which, if used, collect and store customers' biometric identifier information" and that "no biometric identifier information will be collected and stored from customers who do not use an Amazon One device."

## C.    Plaintiff Dhawan

100.    On August 8, 2022, Mr. Dhawan visited the Amazon Go store located at 620 8th Avenue, New York, New York.

101.    The Amazon Go store at 620 8th Avenue in Manhattan has the same Just Walk Out technology as the other Amazon Go stores in New York City, including same types of computer vision, deep learning algorithms, and sensor fusion that Amazon applies at its other

COMPLAINT FOR DAMAGES AND JURY DEMAND - 29

Amazon Go stores and in the cloud.

102.    To enter through the gates of the Amazon Go store, Mr. Dhawan scanned his palm through an Amazon One palm scanner device. Before entering the store, Mr. Dhawan did not see any sign disclosing that Defendants would collect, retain, convert, store, or share customers' biometric identifier information. In particular, he did not see the 8.5 x 11-inch sign that the Department of Consumer and Worker Protection has made available to commercial establishments like Amazon to comply with § 22-1202(a). *See* https://perma.cc/QX57-G48H.

103.    Upon entering the store, Amazon's computer vision identified Mr. Dhawan through the shape and size of his body and then tracked every single movement that Mr. Dhawan made in the store to identify where he went, what items he removed from the shelves, and what items he put back on the shelves.

104.    After visiting the Amazon Go store on August 8, 2022, Mr. Dhawan learned that Defendants, through both the palm scanners at the Stores and the Just Walk Out technology the Stores use throughout the City of New York, had collected, retained, converted, stored, and/or shared biometric identifier information about himself and all other customers who have entered the Stores in New York City, including by using computer vision to collect information and take measurements on the size and shape of each customer's body and by taking palm scans for customers who choose to enter the store by scanning their palms on the Amazon One palm scanner device. In addition, Mr. Dhawan learned that Amazon shares palm scan information with third parties that use the Amazon One palm scanner devices in their own stores, including Starbucks.

105.    If Mr. Dhawan had known that Defendants would collect, retain, convert, store, and/or share biometric information about him, including the size and shape of his body, he would not have entered the Amazon Go store or purchased anything from the store.

COMPLAINT FOR DAMAGES AND JURY DEMAND - 30

106.    Mr. Dhawan values his privacy and is concerned that companies like Defendants track collect, retain, convert, store, and share too much information that is linked to him and other people. Mr. Dhawan believes that consumers should be fully informed about what data and information about them companies collect, retain, convert, store, share, and sell before those companies collect that data and information, so that consumers can understand and knowingly consent to the collection of that data and information.

**VI.    Defendants Failed To Take Corrective Measures Or Provide Plaintiffs With Express Written Statements That The Violations Had Been Cured And That No Further Violations Will Occur**

107.    As described above, Amazon did not respond to Mr. Rodriguez Perez's letter and Starbucks did not respond to Ms. Mallouk's letter. And while Amazon did respond to Ms. Mallouk's letter, Amazon did not provide Ms. Mallouk with an express written statement that the violation of N.Y.C. Admin. Code § 22-1202(a) has been cured and that no further violations shall occur. Instead, Amazon stated that it would only post signage that states that the only biometric identifier information that it collects at Amazon Go stores is palm scans from customers who use the Amazon One device, even though Amazon *does* collect biometric identifier information from every customer who enters an Amazon Go store, namely information on the size and shape of each customer's body.

108.    From the time that Mr. Rodriguez Perez first wrote to Amazon on February 7 through March 13, 2023, Amazon did not post any signs at the 80 Pine Street store to disclose Amazon's collection of biometric identifier information, and, upon information and belief, Amazon did not post any signs at the other Amazon Go stores in New York City disclosing its collection of biometric identifier information.

COMPLAINT FOR DAMAGES AND JURY DEMAND - 31

109.    On March 14, 2023, Amazon posted the following sign at the 80 Pine Street Amazon Go store and at least some of the other Amazon Go stores in New York City.



110.    The sign states as follows: "Biometric information collected at this location. Amazon Go. This business uses an Amazon One device that collects and stores customers' biometric identifier information. If you use Amazon One, your biometric information will be used to help identify you. No biometric information will be collected from customers who do not use an Amazon One palm scanner."

1     111.    On or after March 14, 2023, at the 30 Rockefeller Plaza Go store Amazon posted

2     a small black sign with the same writing as the sign above. The sign is shown towards the left of

3     the following image:



112.    Similarly, Starbucks did not respond to Ms. Mallouk's March 21, 2023 letter,

despite the fact that Ms. Mallouk provided Starbucks her business address in New York City. Nor

did Starbucks inform Ms. Mallouk in writing that Starbucks' violation of N.Y.C. Admin. Code §

22-1202(a) had been cured and that no further violations would occur.

113.    From the time that Ms. Mallouk visited the Starbucks–Amazon Go store on

November 19, 2022 through March 13, 2023, Starbucks did not post any signs at the 111 E. 59th

Street store to disclose Starbucks's collection, retention, conversion, storage, or sharing of

biometric identifier information, and Starbucks did not post any signs at the other 620 8th Avenue

Starbucks–Amazon Go store location disclosing its collection, retention, conversion, storage, or

COMPLAINT FOR DAMAGES AND JURY DEMAND - 33

1   sharing collection of biometric identifier information.

2       114.    On March 14, 2023, Starbucks posted the following sign at its 111 E. 59th Street

3   Starbucks–Amazon Go store location and its 620 8th Avenue location in New York City.



4

5

6

7

8

9

10

11

12

13

14      115.    The sign states as follows: "Biometric information collected at this location.

15  Starbucks Pickup® + Amazon Go. This business uses an Amazon One device that collects and

16  stores customers' biometric identifier information. If you use Amazon One, your biometric

17  information will be used to help identify you. No biometric information will be collected from

18  customers who do not use an Amazon One palm scanner."

19      116.    The signs that Defendants posted at their stores fall woefully short of complying

20  with the Biometric Identifier Information Law's disclosure mandate, and accordingly Defendants

21  have not yet taken corrective action in response to Mr. Rodriguez Perez's February 7, 2023 notice,

22  Ms Mallouck's March 21, 2023 notice, or any notice sent by other customers thereafter. *See*

23

24

COMPLAINT FOR DAMAGES AND JURY DEMAND - 34

N.Y.C. Admin. Code § 22-1202(a).

117.    Defendants' identically-worded signs do not comply with N.Y.C. Admin. Code § 22-1202(a) for three reasons.

118.    First, the signs are not "clear and conspicuous," as § 22-1202(a) and its implementing rule require. The style of the signs is designed to avoid attracting attention—the very opposite of clear and conspicuous. The color, style, and font size of the sign do not attract the attention of customers who enter the store. Defendants' custom signs stand in stark contrast to the standard sign authorized by New York City's Department of Consumer and Worker Protection that has a bright red banner that draws attention by stating "Attention Customers." In addition, at least in the case of Amazon's 30 Rockefeller Plaza location, the small sign has not been placed at each consumer entrance and has been placed in a location to the far left that makes it all but impossible that customers entering on the opposite side (*i.e.*, five doors down) will ever see, much less read, the sign.

119.    Second, the signs do not identify all of the actions that Defendants take with respect to customers' biometric identifier information that § 22-1202(a) requires to be disclosed on a sign. Section 22-1202(a) and its implementing rule require commercial establishments to post a sign notifying customers that "customers' biometric identifier information is being collected, retained, converted, stored, or shared, as applicable." N.Y.C. Admin. Code § 22-1202(a) (emphasis added); *see also* N.Y.C. Rules, Tit. 6, Ch. 8, § 8-01 (stating that the sign must disclose "if customers' biometric identifier information is being collected, retained, converted, stored, or shared."). The model sign provided by the Department of Consumer and Worker Protection references not just the collection of biometric identifier information, but covers the waterfront of all the relevant types of actions the law requires to be disclosed. By including the

words "as applicable" in the phrase "customers' biometric identifier information is being collected, retained, converted, stored or shared, as applicable," § 22-1202(a) makes clear that the signs must disclose *all* of the relevant types of actions that the commercial establishment takes with respect to biometric identifier information.

120.    Instead, Defendants' signs only mention generally that biometric information is "collected" at this location and when referencing the Amazon One palm scanner it says that the device "*collects and stores* customers' biometric identifier information." (emphasis added). The sign, however, does not state that Defendants *convert or retain* customers' biometric identifier information, even though Defendants do convert and retain such information, as described above. Nor do the signs at Starbucks–Amazon Go stores state that Starbucks shares customers' biometric identifier information, even though Starbucks *does* share such information with Amazon, as described above. Likewise, the signs at the Amazon Go stores do not disclose that Amazon shares customers' biometric identifier information, namely the palmprints with third parties.

121.    Third, and most troubling, other than the signs' references to how the Amazon One palm scanner collects and stores biometric identifier information from customers who use Amazon One, the signs expressly deny and disavow that the stores collect customers' biometric identifier information. The signs unequivocally state: "No biometric information will be collected from customers who do not use an Amazon One palm scanner." In other words, the signs are telling customers that if they do not use the Amazon One palm scanner, their biometric identifier information will never be collected.  But as described above, the stores always collect, convert, store, and retain biometric identifier information from every customer who enters the stores— including those who don't use the Amazon One palm scanner—by applying computer vision, deep learning algorithms, and sensor fusion that measure the shape and size of each customer's

body to identify customers, track where they move in the stores, and determine what they have purchased. An ordinary, reasonable person who reads the signs would thus believe that their biometric identifier information will not be collected by the Stores so long as they don't use the Amazon One palm scanner to enter, even though Defendants always collect, retain, convert, store, and in Starbucks's case the company shares biometric identifier information for each-and-every customer with Amazon.

122.    Customers who read Defendants' signs but do not use the Amazon One palm scanner are placed in a worse position for having read the signs than if they had not seen the signs in the first place—because they have been led to falsely believe that Defendants will not collect any of their biometric identifier information. And even customers who choose to use the Amazon One palm scanner would reasonably believe that the Amazon One palm scanner is the only way in which their biometric identifier information is being collected, although that is not true.

**VII.    Defendants Further Violated The New York City Biometric Identifier Information Law by Sharing Biometric Identifier Information for Things of Value or Otherwise Profiting From the Transaction of Such Information**

123.    Defendants have also violated the provision of the NYC BILL that makes it unlawful to "unlawful to sell, lease, trade, share in exchange for anything of value or otherwise profit from the transaction of biometric identifier information." N.Y.C. Admin. Code § 22-1202(b).

124.    Amazon has shared palmprints with third parties, by collecting customers' palmprints at Amazon Go and Whole Foods locations in New York City, and then making its Amazon One device and database of palmprints available to third-party retailers like Starbucks, in exchange for things of value and profit. And Starbucks has shared with Amazon information

COMPLAINT FOR DAMAGES AND JURY DEMAND - 37

about the size and shape of each customer's body who enters the gated areas of the Starbucks–Amazon Go stores and palmprints of customers who enter the gated areas with a palm scan.

125.    Both Amazon and Starbucks have received things of value for sharing such biometric identifier information of Plaintiffs and the Class Members and have profited from the transaction of such biometric identifier information.

126.    Amazon shares, leases, trades, and sells palmprints, a form of biometric identifier information, with third-party retailers like Starbucks. Amazon does this by collecting palmprints of its customers at Amazon Go and Whole Foods stores in New York City, storing those palmprints in its Amazon One database, and then making Amazon One hardware devices and databases of palmprints available to Starbucks and other third-party retailers. Through this sharing of biometric identifier information, Amazon enables third-party retailers to sign-in customers via the Amazon One device, and those retailers across the United States can access the biometric identifier information of people who provided their palmprints to Amazon in New York City.

127.    Prominently displayed on the website for Amazon One, one.amazon.com, Amazon advertises: "Bring Amazon One to your business. If you're a business that wants to provide your customers a seamless service, faster payments, and a personalized experience - contact us to learn more about how Amazon One can help."[6]  Businesses are encouraged to click on the "contact us" words therein, which hyperlink to the email address AmazonOneSales@amazon.com.  On the page, mentioned above that describes its "Just Walk Out" technology, Amazon also advertises that, "[w]ith Just Walk Out technology and Amazon One–enabled stores, employees can spend

---

[6] https://one.amazon.com/.

COMPLAINT FOR DAMAGES AND JURY DEMAND - 38

more time assisting shoppers, answering questions, helping them find items, and stocking shelves as needed, rather than operating checkouts and manually processing payments."[7]

128.    Currently, Amazon One is primarily used in Amazon's own brick-and-mortar locations, including, but not limited to, Amazon Go stores, Amazon Campus Cafes, Amazon Fresh grocery stores, Amazon Style clothing stores, and at Whole Foods.[8]  But Amazon has already provided Amazon One to a number of third-party retailers, including Starbucks' locations with Amazon Go,[9] sports and entertainment arenas,[10] casinos, airports, and other venues, from New York City to Chicago to Dallas to Seattle.[11]

129.    Amazon has received things of value, gained, and profited from sharing, leasing, trading, or selling its Amazon One devices and databases with third-party retailers, including, upon information and belief: (a) monetary compensation from third-party retailers; (b) installing and operating Amazon One at high-profile retailers and events that serve as an advertising tool and proof-of concept for selling, renting, and/or leasing Amazon One to a large number of companies in the future; (c) enabling and encouraging third-party retailers to collect palmprints from additional customers and provide them to Amazon in order to grow Amazon's database of

---

[7] https://aws.amazon.com/blogs/industries/make-convenience-stores-even-more-convenient-with-amazons-just-walk-out-technology-and-amazon-one/.

[8] https://one.amazon.com/.

[9] *E.g.* https://www.starbucks.com/store-locator/store/1032137/59th-park-lex-w-amazon-go-111-east-59th-st-space-1-new-york-ny-10022-us.

[10] https://www.theverge.com/2021/9/14/22673238/amazon-one-palm-scanning-tech-entertainment-venue-red-rock-amphitheatre; https://aws.amazon.com/just-walk-out/.

[11] https://one.amazon.com/.

COMPLAINT FOR DAMAGES AND JURY DEMAND - 39

biometric and other personal data, which Amazon, in turn,  markets, sells, leases, shares, and otherwise provides to other companies in exchange for money or other things of value.

130.     Under its agreement with Amazon, Starbucks also additionally benefits and profits from its collection, conversion, retention, storage, sharing, selling, and/or trading of its customers' biometric identifier information with Amazon.

131.     First, Starbucks shares, sells, and trades its customers' biometric information with and to Amazon in exchange for the ability to use Amazon's "Just Walk Out" technology for a marginal or discounted rate. In other words, because Starbucks is allowing Amazon to receive and use Starbucks customers' biometric identifier information for Amazon's own commercial purposes, Starbucks receives a cost savings from the usual cost of Amazon's "Just Walk Out" technology.

132.     Second, Starbucks' shares, sells, and trades its customers' biometric information with and to Amazon in exchange for the use and receipt of Amazon's "Just Walk Out Analytics"—*i.e.*, Amazon's insights showing how products within the Starbucks' stores are being considered, picked up, returned to shelf, and/or purchased by its customers who enter Starbucks' marketplace and lounge seating areas.[12]  These Just Walk Out Analytics that Amazon provides to Starbucks are created with and rely on the biometric identifier information of customers that Starbucks collects at the Starbucks–Amazon Go stores and provides, shares, sells, and trades with and to Amazon. As a result, Starbucks can forego relying on expensive customer surveys that

---

[12] *See* Jon Jenkins, Uncover store opportunities, drive efficiencies, and improve the consumer experience with Amazon's Just Walk Out Analytics, aws.amazon.com (Jan. 4, 2023), https://perma.cc/NYX3-GTRK; In the news: Leveling up convenience in the c-store, https://perma.cc/MS2L-HMFJ; Learn how the Just Walk Out technology experience works, Just Walk Out technology by Amazon (Apr. 2023), https://www.youtube.com/watch?v=j9iNEhn4NmE.

COMPLAINT FOR DAMAGES AND JURY DEMAND - 40

only provide data from a snapshot in time, and instead use the Just Walk Out Analytics to drive Starbucks' decision-making into product displays, whether particular items should be added or removed, and whether promotions of certain products drive additional sales. Each of these insights helps to drive more sales, revenues, and profits for Starbucks.

133.   Third, Starbucks' sharing, selling, and trading of its customers' biometric information allows Starbucks to employ fewer workers at its Starbucks–Amazon Go locations than it otherwise would employ. As a result, Starbucks saves significant labor costs through this arrangement.

134.   Finally, Starbucks' sharing, selling, and trading of its customers' biometric information allows Starbucks to distinguish itself from other coffee and convenience stores, thereby giving it a competitive edge in attracting new customers to its Starbucks–Amazon Go stores, based on both their convenience and novelty. For example, upon its November 2021 opening, the first location made national and local headlines and was the subject of video tours on YouTube promoting the store.

135.   Thus Starbucks has "otherwise profited from" transactions of its customers' biometric identifier information with Amazon, including by (1) having Just Walk Out technology installed and operated in Starbucks' stores for a marginal or discounted price in exchange for sharing customers' biometric identifier information; (2) receiving Just Walk Out Analytics and insights from Amazon in return, thereby allowing Starbucks to increase its revenues and profits; (3) allowing Starbucks to staff its Starbucks–Amazon Go stores with fewer Starbucks employees, thereby causing Starbucks to save additional monies in the form of reduced employee salaries and

benefits; and (4) driving additional customers to Starbucks stores who are interested in Starbucks' new concept and an expanded marketplace and lounge area.

136.    Plaintiffs and other members of the Class have suffered injuries and been harmed by Defendants' misconduct, including but not limited to (1) making purchases at Amazon Go and Starbucks–Amazon Go stores that they otherwise would not have made had Amazon and/or Starbucks provided them the required notification, (2) having their biometric identifier information collected, retained, converted, stored and shared without their knowledge, consent, or adequate compensation, (3) losing the ability and power to make informed decisions about the collection, retention, conversion, storage, sharing, and use of their biometric information, including which third parties Amazon and Starbucks can share their biometric information with, (4) having their privacy rights and interests violated, including by creating a risk that their biometric information will be misused or shared by Amazon, Starbucks, and other parties with which Amazon transacts business and a risk that information about the size and shape of their bodies could be used to identify customers' medical conditions or diseases, (5) having Defendants profit from the collection, retention, conversion, storage, and sharing of their biometric information without providing them just compensation, and (6) the denial of their statutory rights under the NYC BIIL.

137.    Each injury was caused by Amazon's and Starbucks' failure to provide the required notice under N.Y.C. Admin. Code § 22-1202(a) and the actions Defendants took to violate N.Y.C. Admin. Code § 22-1202(b), which prohibits sharing, selling, or trading customers' biometric identifier information for anything of value, or otherwise profiting from customers' biometric identifier information. These injuries can be redressed through the payment of damages to the Plaintiffs and the members of the proposed Class.

COMPLAINT FOR DAMAGES AND JURY DEMAND - 42

**CLASS ALLEGATIONS**

138.    **Class Definition:** Plaintiffs bring this action pursuant to N.Y.C. Admin. Code § 22-1201, *et seq*. on behalf of a class of similarly situated individuals, defined as follows (the "Signage Class"):

> All individuals who on or after January 15, 2022 through the date of judgment in this action entered an Amazon Go or Starbucks–Amazon Go store in the City of New York.

139.    Plaintiff Suzanne Mallouk additionally brings this action on behalf of a subclass of similarly situated individuals, defined as follows (the "Starbucks Subclass"):

> All members of the Class who entered a Starbucks–Amazon Go store in the City of New York.

140.    Plaintiff Arjun Dhawan additionally brings this action on behalf of a Class of similarly situated individuals, defined as follows (the "Palmprint Class"):

> All individuals who on or after July 9, 2021 through the date of judgment in this action had their palmprints collected, captured, received or otherwise obtained and/or stored while using an Amazon One palm scanner in the in New York City.

141.    The aforementioned Classes and Subclass shall collectively be referred to as the "Classes."

142.    **Numerosity:** The number of persons within the Classes is substantial and believed to amount to tens of thousands of persons. It is, therefore, impractical to join each member of the Classes as a named Plaintiff.  Further, the size and relatively modest value of the claims of the individual members of the Classes renders joinder impractical.  Accordingly, use of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.  Moreover, the Classes are ascertainable and identifiable from Defendant's records.

143.  **Commonality and Predominance:** There are well-defined common questions of fact and law that exist as to all members of the Classes and that predominate over any questions affecting only individual members of the Classes.  These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to, the following:

>    (a) whether Defendants collected, retained, converted, stored and/or shared Plaintiffs' and the Classes' biometric identifier information;
>
>    (b) whether Defendants placed a clear and conspicuous sign near all of the commercial establishment's customer entrances notifying customers in plain, simple language, in a form and manner prescribed by the commissioner of consumer and worker protection by rule, that Plaintiffs' and the Classes' biometric identifier information was being collected, retained, converted, stored or shared;
>
>    (c) whether Defendants sold, leased, traded, shared in exchange for anything of value, or otherwise profited from the transaction of Plaintiffs' and the Classes' biometric identifier information;
>
>    (d) whether Defendants have violated N.Y.C. Admin. Code § 22-1202(a) and (b); and
>
>    (e) whether Defendants' violations were negligent, reckless, and/or intentional?

144.  **Typicality:** The Plaintiffs' claims are typical of the claims of the Classes they seek to represent, because during the relevant period Plaintiffs and the Class Members were subjected to the same pattern or practice or course of conduct and their claims arise from the same pattern or practice or course of conduct that forms the basis of the Class Members' claims. In addition, the Plaintiffs bring the same legal claims as the Class Members for violation of the NYC BIIL and for unjust enrichment based on the same legal theory as the other Class Members.

COMPLAINT FOR DAMAGES AND JURY DEMAND - 44

145. **Adequate Representation:** Plaintiffs have retained and are represented by qualified and competent counsel who are highly experienced in complex consumer and privacy class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this class action.  Moreover, Plaintiffs are able to fairly and adequately represent and protect the interests of the Classes.  Neither Plaintiffs nor their counsel has any interest adverse to, or in conflict with, the interests of the absent members of the Classes.  Plaintiffs have raised viable statutory claims of the type reasonably expected to be raised by members of the Classes, and will vigorously pursue those claims.  If necessary, Plaintiffs may seek leave of this Court to amend this Class Action Complaint to include additional Class representatives to represent the Classes, additional claims as may be appropriate, or to amend the Class definition(s) to address any steps that Defendants took.

146. **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable.  Even if every member of the Classes could afford to pursue individual litigation, the Court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. It is desirable to concentrate the litigation of the claims in this forum, because Amazon and Starbucks both reside and have corporate headquarters in this District. Plaintiffs anticipate no

1   difficulty in the management of this action as a class action.  Class-wide relief is essential to

2   compliance with NYC BIIL.

3

4                                    **COUNT I**
                        **Violations of N.Y.C. Admin. Code § 22-1202(a)**
5              **On Behalf of Plaintiffs and the Signage Class Against Amazon and**
          **On Behalf of Plaintiff Mallouk and the Starbucks Subclass Against Starbucks**
6          147.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

7          148.    Plaintiffs bring this claim on behalf of the Signage Class against Amazon and

8   Plaintiff Mallouk brings this claim on behalf of the Starbucks Subclass against Starbucks.

9          149.    Defendants have engaged in a pattern or practice of violating N.Y.C. Admin. Code

10  § 22-1202(a).

11         150.    N.Y.C. Admin. Code § 22-1202(a) provides that "[a]ny commercial establishment

12  that collects, retains, converts, stores or shares biometric identifier information of customers must

13  disclose such collection, retention, conversion, storage or sharing, as applicable, by placing a clear

14  and conspicuous sign near all of the commercial establishment's customer entrances notifying

15  customers in plain, simple language, in a form and manner prescribed by the commissioner of

16  consumer and worker protection by rule, that customers' biometric identifier information is being

17  collected, retained, converted, stored or shared, as applicable."

18         151.    N.Y.C. Admin Code § 22-1201 provides that "[t]he term 'biometric identifier

19  information' means a physiological or biological characteristic that is used by or on behalf of a

20  commercial establishment, singly or in combination, to identify, or assist in identifying, an

21  individual, including, but not limited to: (i) a retina or iris scan, (ii) a fingerprint or voiceprint,

22  (iii) a scan of hand or face geometry, or any other identifying characteristic."

23

24

COMPLAINT FOR DAMAGES AND JURY DEMAND - 46

152.     The Amazon Go and Starbucks–Amazon Go stores in the City of New York are "commercial establishment[s]" within the meaning of § 22-1201, because each store is a "retail store" and a "food and drink establishment." Each store is a "retail store" because it is an establishment that sells consumer commodities. And each store is a "food and drink establishment" because it sells food or beverages to the public for consumption off of the premises. *See* N.Y.C. Admin. Code § 22-1201.

153.     As described above, Amazon and Starbucks, by operating Amazon's Just Walk Out technology, collect, retain, convert, and store, biometric identifier information about each customer who enters the store, including but not limited to information about the size and shape of each customer's body and palm images of consumers who use the Amazon One technology to sign into the store. And Starbucks shares such information about customers with Amazon.

154.     Information about the size and shape of each customer's body is biometric identifier information within the meaning of N.Y.C. Admin. Code § 22-1201, because that information constitutes a physiological or biological characteristic used by Amazon, singly or in combination, to identify the customer, and that information is an "identifying characteristic" of each customer. As the New York City Council's Committee on Consumer Affairs and Business Licensing stated in its December 10, 2020 Committee Report (at p. 3) on Local Law 3, "physiological characteristics concern the shape or composition of the body".

155.     The palm images that Amazon Go and Starbucks–Amazon Go stores scan are also biometric identifier information within the meaning of N.Y.C. Admin. Code § 22-1201. A "scan of [the] hand" is one of the enumerated examples of "biometric identifier information" in N.Y.C. Admin. Code § 22-1201.

COMPLAINT FOR DAMAGES AND JURY DEMAND - 47

156.     Upon information and belief, from January 15, 2022, when Section 22-1202(a) of the Biometric Identifier Information Law became effective, through March 13, 2023, none of the Amazon Go or Starbucks–Amazon Go stores in New York City placed any sign near the entrances of the stores to notify customers that customers' biometric information is being collected, retained, converted, stored, and/or shared.

157.     By failing to post any sign notifying consumers that their biometric information is being collected, retained, converted or stored by all of the Amazon Go and Starbucks–Amazon Go stores in New York City from January 15, 2022 through March 13, 2023, Amazon and Starbucks violated N.Y.C. Admin. Code § 22- 1202(a).

158.     Although on March 14, 2023 Amazon placed a sign at the 80 Pine Street store—and other Amazon Go stores in New York City—stating that the store collects biometric identifier information, that sign does not comply with N.Y.C. Admin. Code § 22-1202(a).

159.     Although on March 14, 2023, Starbucks placed a sign at the 111 E. 59th Street store—and its other Starbucks–Amazon Go store in New York City—stating that the store collects biometric identifier information, that sign does not comply with N.Y.C. Admin. Code § 22-1202(a).

160.     As described above, the signs at the Amazon Go and Starbucks–Amazon Go stores are not "clear and conspicuous," because they are designed to avoid attracting the attention of customers entering the store. The signs also do not disclose that the stores convert or retain biometric identifier information, as required by § N.Y.C. Admin. Code § 22-1202(a), when the commercial establishment does convert or retain such information. And the signs expressly deny and disavow that the stores are collecting customers' biometric identifier information except for customers who use the Amazon One palm scanner, even though the stores do collect, retain,

convert, store, and/or share biometric identifier information from all customers, including the ones who do not use the Amazon One palm scanner. Rather than informing all customers that their biometric identifier information will be collected—as well as retained, converted, and stored—as required by § N.Y.C. Admin. Code § 22-1202(a), the signs communicate to customers that their biometric identifier information *will not* be collected.

161.    Plaintiffs and the other Class Members have been aggrieved by Defendants' violations of § 22-1202(a), because Defendants failed to provide them with the proper notification that is required by § 22-1202(a) when they approached and then entered the Stores in New York City.

162.    Plaintiffs and other members of the Class have been injured by Amazon and Starbucks' failure to provide them with the notification required by N.Y.C. Admin. Code § 22-1202(a), as described above.

163.    Under N.Y.C. Admin. Code § 22-1203, Defendants are liable to the Plaintiffs and each member of the Classes for damages of at least $500 for each violation of § 22-1202(a). A violation has occurred each time that the Plaintiffs or a member of the Classes entered one of the Amazon Go or Starbucks–Amazon Go stores in New York City on or after January 15, 2022 at a time when Defendants did not place a sign near each customer entrance of said Store, in accordance with § N.Y.C. Admin. Code § 22- 1202(a).

164.    Defendants' actions were intentional, deliberate, reckless, and indifferent to the rights of Plaintiffs and the Class Members.

165.    Plaintiffs and the putative class furthermore did not consent—meaningfully, expressly, or otherwise—to Defendants' collection, sale, lease, trading, sharing in exchange for anything of value and/or otherwise profiting from Plaintiffs' and Class members' biometric

COMPLAINT FOR DAMAGES AND JURY DEMAND - 49

1   identifier information.

2       166.   Plaintiffs seek their attorneys' fees and costs related to this lawsuit and

3   Defendants' violations of N.Y.C. Admin. Code § 22-1202(a).

4       167.   Because Amazon failed to provide Plaintiff Rodriguez Perez with an express

5   written statement that the violation of § 22-1202(a) has been cured and that no further violations

6   shall occur within 30 days of Plaintiff Rodriguez Perez providing written notice to Amazon of its

7   violation of N.Y.C. Admin. Code § 22-1202(a), and because Amazon has continued to violate

8   N.Y.C. Admin. Code § 22-1202(a) after Plaintiff Rodriguez Perez provided Amazon with notice

9   of the violation of N.Y.C. Admin. Code § 22-1202(a),  Plaintiffs have a right to initiate an action

10  against Amazon. *See* N.Y.C. Admin. Code § 22-1203.

11      168.   Because Amazon and Starbucks failed to provide Plaintiff Mallouk with an

12  express written statement that the violation of § 22-1202(a) has been cured and that no further

13  violations shall occur within 30 days of Plaintiff Mallouk providing written notice to Amazon and

14  Starbucks of their violation of N.Y.C. Admin. Code § 22-1202(a), and because Amazon and

15  Starbucks have continued to violate N.Y.C. Admin. Code § 22-1202(a) after Plaintiff Mallouk

16  provided them with notice of the violation of N.Y.C. Admin. Code § 22-1202(a), Plaintiff

17  Mallouk has a right to initiate an action against Amazon and Starbucks. *See* N.Y.C. Admin. Code

18  § 22-1203.

19

20

21

22

23

24

COMPLAINT FOR DAMAGES AND JURY DEMAND - 50

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

<u>**COUNT II**</u>
**Violations of N.Y.C. Admin. Code § 22-1202(b)**
**On Behalf of Plaintiff Dhawan and the Palmprint Class Against Amazon and**
**On Behalf of Plaintiff Mallouk and the Starbucks Subclass Against Starbucks**

169.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

170.    Plaintiff Dhawan brings this claim on behalf of the Palmprint Class against Amazon and Plaintiff Mallouk brings this claim on behalf of the Starbucks Subclass against Starbucks.

171.    NYC BIIL states that "[i]t shall be unlawful to sell, lease, trade, share in exchange for anything of value or otherwise profit from the transaction of biometric identifier information." N.Y.C. Admin. Code § 22-1202(b).

172.    As described above, Amazon has shared, sold, leased and traded biometric identifier information with third parties, by collecting customers' palmprints at Amazon Go and Whole Foods locations in New York City and then making its Amazon One device and database of palmprints available to third-party retailers like Starbucks, in exchange for things of value and profit.

173.    Amazon has received things of value, gained, and profited from sharing, leasing, trading, or selling its Amazon One devices and databases with third-party retailers, including, upon information and belief: (a) monetary compensation from third-party retailers; (b) installing and operating Amazon One at high-profile retailers and events that serve as an advertising tool and proof-of concept for selling, renting, and/or leasing Amazon One to a large number of companies in the future; and (c) enabling and encouraging third-party retailers to collect palmprints from additional customers and provide them to Amazon in order to grow Amazon's database of biometric and other personal data, which Amazon, in turn, markets, sells, leases, shares, and otherwise provides to other companies in exchange for money or other things of value.

COMPLAINT FOR DAMAGES AND JURY DEMAND - 51

174.     Starbucks has sold, traded, and/or shared biometric identifier information of its customers who entered the gated areas of its Starbucks–Amazon Go stores in exchange for things of value, by (1) collecting palm images from some of its customers and information on the size and shape of all of the customers' bodies in the gated areas, (2) providing those palm images and information on the size and shape of customers' bodies to Amazon, and (3) receiving monetary and non-monetary benefits and consideration from Amazon in exchange for sharing the biometric identifier information, including having Just Walk Out technology installed and operated in Starbucks' stored for a marginal or discounted price, receiving Amazon's Just Walk Out Analytics, obtaining the ability to use Just Walk Out Technology that allows Starbucks to reduce the number of employees in its stores and lower its labor costs, and increasing Starbucks' customer base, sales, and profit and reducing its costs.

175.     Starbucks has otherwise profited from transactions of its customers' biometric identifier information with Amazon, including by (a) having Just Walk Out technology installed and operated in Starbucks' stores for a marginal or discounted price in exchange for sharing customers' biometric identifier information; (b) receiving Just Walk Out Analytics and insights from Amazon in return, thereby allowing Starbucks to increase its revenues and profits; (c) allowing Starbucks to staff its Starbucks–Amazon Go stores with fewer Starbucks employees, thereby causing Starbucks to save additional monies in the form of reduced employee salaries and benefits; and (d) driving additional customers to Starbucks stores who are interested in Starbucks' new concept and an expanded marketplace and lounge area.

176.     Plaintiffs' and the members of the Classes' biometric identifiers were used to identify them and, therefore, constitute "biometric identifier information" as defined by NYC BIIL. *See* N.Y.C. Admin. Code § 22-1201.

COMPLAINT FOR DAMAGES AND JURY DEMAND - 52

177.    Plaintiffs and the putative class furthermore did not consent—meaningfully, expressly, or otherwise—to Defendants' collection, sale, lease, trading, sharing in exchange for anything of value and/or otherwise profiting from Plaintiffs' and Class members' biometric identifier information.

178.    Plaintiffs and the other members of the Starbucks Subclass and Palmprint Class have been aggrieved by Defendants' violations of § 22-1202(b), because, *inter alia*, their biometric identifier information was shared, traded, or sold by the Defendants in exchange for things of value or Defendants otherwise profited from such information.

179.    Plaintiffs and other members of the Class have been injured by Amazon's and Starbucks' violations of § 22-1202(b), as described above.

180.    Defendants' actions and violations were negligent, intentional, and/or reckless to the rights of Plaintiffs and the Class Members under N.Y.C. Admin. Code § 22-1202(b).

181.    Plaintiffs seek their attorneys' fees and costs related to this lawsuit and Defendants' violations of N.Y.C. Admin. Code § 22-1202(b).

182.    Under N.Y.C. Admin. Code § 22-1203, Defendants are liable to the Plaintiffs and each member of the Palmprint Class and Starbucks Subclass for damages of at least $500 for each negligent violation of § 22- 1202(b) and $5,000 for each intentional or reckless violation of § 22-1202(b).

183.    A violation has occurred each time that Plaintiff Mallouk or a member of the Starbucks Class entered the gated area of a Starbucks–Amazon Go store in New York City on or after July 9, 2021 at a time when Starbucks operated Just Walk Out technology in the gated area, or each time that Plaintiff Dhawan or a member of the Palmprint Class scanned their palm at an Amazon One device in New York City on or after July 9, 2021.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## COUNT III
### Unjust Enrichment
### Alleged in the Alternative to Claims One and Two
### On Behalf of Plaintiffs and the Classes

184.    The Plaintiffs, on behalf of themselves and the members of the Classes, incorporate by reference all preceding paragraphs.

185.    In the alternative to alleged Claims One and Two, Plaintiffs allege a claim for unjust enrichment and that they have no adequate remedy at law for this claim. Alternatively, legal remedies available to Plaintiff are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); *see also U.S. v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("the 'mere existence' of a possible legal remedy is not sufficient to warrant denial of equitable relief"); *Quist v. Empire Water Co.*, 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view …. It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future").   Furthermore:

a.    To the extent damages are available here, damages are not equally certain as restitution because the standard that governs ordering restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.

b.    Damages and restitution are not necessarily the same amount. Unlike damages, restitution is not limited to the amount of money Defendants wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution,

COMPLAINT FOR DAMAGES AND JURY DEMAND - 54

entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Plaintiffs seek such relief here.

c.  Legal claims for damages are not equally certain as restitution because unjust enrichment claims entail few elements.

d.  And, a claimant otherwise entitled to a remedy for unjust enrichment, including a remedy originating in equity, need not demonstrate the inadequacy of available remedies at law. Restatement (Third) of Restitution, § 4(2).

186.    A plaintiff has a claim for unjust enrichment when the defendant was enriched at the plaintiff's expense, and it is against equity and good conscience to permit the defendant to retain what is sought to be recovered.

187.    Because Defendants failed to provide notice to customers that they collect, retain, convert, store, and share their biometric identifier information, including information on the size and shape of each customer's body, Plaintiffs and other members of the Classes entered the store and made purchases that they otherwise would not have made if Defendants had properly provided that notice, or would not have agreed to pay the same price for the goods they purchased if Defendants had properly provided that notice. Those purchases enriched Defendants at the expense of the Plaintiffs and the members of the Classes. And because Defendants—without each customer's knowledge or consent—shared customers' biometric identifier information with other parties, Plaintiffs and the other members of the Classes entered the store and made purchases that they otherwise would not have made if Starbucks had properly provided that notice or obtained each customer's consent, or would not have agreed to pay the same price for the goods they purchased if Defendants had properly provided that notice and consent. Those purchases enriched

Defendants at the expense of the Plaintiffs and members of the Classes. It is against equity and good conscience to permit Starbucks to retain the money that it received from the Plaintiffs and the members of the Classes under these circumstances.

188.    Defendants are liable to the Plaintiffs and the members of the Classes for the profit that Defendants earned from the sales in the Amazon Go and Starbucks–Amazon Go stores during the period of time that Defendants did not notify customers that the stores collect, retain, convert, store, and otherwise profited from the sharing of their biometric identifier information.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiffs, on behalf of themselves and the proposed Classes, respectfully requests that this Court enter an Order:

    a.    For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiffs as representative of the Classes and their respective subclasses, and naming Plaintiffs' attorneys as Class Counsel to represent the Class members;

    b.    For an order declaring that Defendants' conduct violates the statutes referenced herein;

    c.    For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

    d.    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

    e.    For prejudgment interest on all amounts awarded;

    f.    For an order of restitution and all other forms of equitable monetary relief;

    g.    For an order enjoining Defendants from continuing the illegal practices detailed herein and compelling Defendants to undertake a corrective advertising campaign; and

    h.    For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

1

## JURY DEMAND

2

Plaintiffs hereby demand a trial by jury on all issues so triable.

3

Dated:   June 7, 2023                          Respectfully submitted,

4

5                                              **RIVERSIDE LAW GROUP**

6                                              By: */s/ Matthew Z. Crotty*_____

7                                              Matthew Z. Crotty
                                               Casey Bruner
                                               Riverside Law Group, PLLC
8                                              905 W. Riverside Ave.
                                               Ste. 404
9                                              Spokane, Washington 99201
                                               Tel:  (509) 850-7011
10                                             Email: mzc@riverside-law.com

11                                             **PETER ROMER-FRIEDMAN LAW PLLC**

12                                             Peter Romer-Friedman (*pro hac vice* forthcoming)
                                               1629 K Street NW
                                               Suite 300
13                                             Washington, DC 20006
                                               Tel.: (202) 355-6364
14                                             Email: peter@prf-law.com

15                                             **POLLOCK COHEN LLP**

16                                             Christopher K. Leung (*pro hac vice* forthcoming)
                                               111 Broadway, Suite 1804
17                                             New York, NY 10006
                                               Tel.: (917) 985-3995
18                                             Email: chris@pollockcohen.com
                                               Email: cmb@riverside-law.com

19                                             **BURSOR & FISHER, P.A.**

20                                             Philip L. Fraietta (*pro hac vice* forthcoming)
                                               Julian C. Diamond (*pro hac vice* forthcoming)
21                                             Matthew A. Girardi (*pro hac vice* forthcoming)
                                               888 Seventh Avenue
22                                             New York, NY 10019
                                               Tel:  (646) 837-7150
23                                             Fax: (212) 989-9163
                                               E-Mail:  pfraietta@bursor.com

24

COMPLAINT FOR DAMAGES AND JURY DEMAND - 57

jdiamond@bursor.com
mgirardi@bursor.com

**SURVEILLANCE TECHNOLOGY OVERSIGHT PROJECT**

Albert Fox Cahn (*pro hac vice* forthcoming)
David Siffert (*pro hac vice* forthcoming)
40 Rector Street
9th Floor
New York, NY 10006
Tel.: (212) 518-7573
Email: albert@stopspying.org
        david@stopspying.org

*Attorneys for Plaintiffs*